GLOUCESTER TOWNSHIP MUNICIPAL UTILITIES AU-
THORITY AND TOWNSHIP COMMITTEE OF THE
TOWNSHIP OF GLOUCESTER, PLAINTIFFS-RESPON-
DENTS, v. GARDEN STATE WATER COMPANY, A COR-
PORATION, DEFENDANT-APPELLANT, AND PHILLIPS-
BURG NATIONAL BANK & TRUST COMPANY, AS
TRUSTEE; CONSUMER'S WATER COMPANY: STATE
OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL
PROTECTION; AND WASHINGTON TOWNSHIP MU-
NICIPAL UTILITIES AUTHORITY, DEFENDANTS.

Argued November 14, 1978—Decided January 31, 1979.

88

Mr. *Paul Mainardi* argued the cause for appellant (*Messrs. Brown, Connery, Kulp, Wille, Purnell & Greene,* attorneys).

Mr. *Joseph A. Maressa* argued the cause for respondents (*Messrs. Maressa and Wade,* attorneys).

The opinion of the court was delivered by

SULLIVAN, J.  Garden State Water Company (Garden State), a defendant herein, pursuant to certification granted by this Court, appeals from a ruling by the Appellate Division which reversed a judgment of the trial court dismissing plaintiffs' complaint in condemnation.

The case has a factual background as follows: Garden State is a privately owned water utility serving some 3300 customers in Gloucester Township, Camden County and Washington Township, Gloucester County. Each township has a municipal utilities authority established under *N. J. S. A.* 40:14B-1 *et seq.,* an act known as the "municipal and county utilities authorities law." The Act, so far as is here pertinent, provides that the governing body of a municipality may create a municipal utilities authority which is empowered, in the manner provided in the act and subject to the limitations therein specified, to acquire, construct, maintain, operate or improve systems for the accumulation, supply or distribution of water.[1]

---

[1] The Act also provides for the acquisition, etc. of solid waste and sewerage systems by municipal utilities authorities.

On January 15, 1976, the Gloucester Township Municipal Utilities Authority and the Township Committee of the Township of Gloucester, plaintiffs herein, filed a complaint in condemnation to acquire the lands and premises of Garden State "within the franchise of said Gloucester Township." The complaint sought the appointment of condemnation commissioners and further proceedings in the manner provided by *N. J. S. A.* 20:3–1 *et seq.*

Named as defendants were, *inter alia,* Garden State, Phillipsburg National Bank & Trust Company (as trustee for Garden State bondholders) and Washington Township Municipal Utilities Authority (Washington Authority). The complaint named the Gloucester Municipal Utilities Authority as the condemning party and cited *N. J. S. A.* 40:14B –34, the eminent domain section of the municipal and county utilities authorities law, as statutory authorization for the condemnation proceedings.

The bank, as trustee for Garden State's bondholders, answered, asserting a priority claim over any proceeds of the condemnation. Washington Authority also filed an answer alleging that a portion of Garden State's property was located in Washington Township and that it (the Washington Authority) possessed exclusive power of eminent domain over Garden State property within the confines of Washington Township.

Defendant Garden State moved to dismiss Gloucester Township as a party plaintiff on the ground that the only statutory authority for the suit alleged in the complaint was *N. J. S. A.* 40:14B–34, which authorizes condemnation by utility authorities, not by townships. Garden State also moved to dismiss the entire complaint on the ground that *N. J. S. A.* 40:14B–34, barred condemnation to a municipal utilities authority where the system of water supply sought to be condemned served 50 or more parcels of real property. Garden State also argued that the complaint should be dismissed because plaintiffs had failed to make any showing that a valid public purpose would be served by the taking.

Following argument of the Garden State motion, and prior to a decision thereon, plaintiffs filed an amendment to their complaint so as to include within the area to be condemned not only Garden State's land and premises in Gloucester Township, but also its property in Washington Township.

The trial judge did not rule on plaintiff Township's standing as a proper party plaintiff. Instead, he dismissed the entire complaint on the ground that since Garden State admittedly served 3300 parcels of real property, suit was barred by *N. J. S. A.* 40 :14B–34 which prohibits a municipal utilities authority from condemning private water facilities which serve 50 or more parcels of real property.

On appeal by plaintiffs, the Appellate Division in an unreported opinion, upheld the trial ruling that plaintiff authority lacked the power under *N. J. S. A.* 40 :14B–34 to condemn the whole of a system of water supply which actually served 50 or more parcels of real property. However, the Appellate Division noted that the Township was also a party plaintiff and that it had independent powers of eminent domain which it could exercise in a cooperative effort with its own utilities authority pursuant to *N. J. S. A.* 40 :14B–24 as amended. The Appellate Division found in the amendment to Section 24 an expression of clear legislative intent that a municipal utilities authority should be permitted to receive whatever assistance it needs and seeks from its parent municipality which that body is willing to give.

The Appellate Division held that, since the Township was a proper party plaintiff, the trial judge should have "suggested" that the complaint be amended to show the Township as the condemning party in the exercise of its independent powers of eminent domain and thereafter, "the usual issues involved in condemnation and the appointment of commissioners (*e. g.,* public purpose *vel non*) should have been duly tried." Accordingly, the Appellate Division

reversed the dismissal of the complaint and remanded the matter for further proceedings consistent with its ruling. We reverse.

The primary issue involved is the construction of Section 34 of the municipal and county utilties authorities law which, *inter alia*, confers the power of eminent domain on municipal utilities authorities established under the law. The section is as follows:

*Every municipal authority is hereby empowered, in its own name* but for the local unit or units, to acquire by purchase, gift, grant or devise and *to take for public use real property, within or without the district, which may be deemed by the municipal authority necessary for its purposes,* including public lands, waters, parks, roads, playgrounds, reservations and public or private rights in waters within or without the district, and any property within or without the district owned by or in which any county, municipality or political subdivision of the State, or public body or agency of such political subdivision, has any right, title or interest. Such municipal authority is hereby empowered to acquire and take such real property, including any such public property or such public interests therein, by condemnation, in the manner provided in P. L. 1971, c. 361 (C. 20:3–1 et seq.) and, to that end, may invoke and exercise in the manner or mode of procedure prescribed in said chapter, either in its own name or in the name of any local unit or units, all of the powers of such local unit or units to acquire or take property for public use; *provided, however, that, notwithstanding the foregoing or any other provision of this act, no municipal authority shall acquire or take, by condemnation,* any real property owned by the State or in which the State has any right, title or interest or *real property in use as part of any system of water supply or distribution actually serving 50 or more parcels of real property* or real property owned by a municipal or county government or any agency thereof which is utilized as part of an utility system thereby; and provided, further, that, notwithstanding the forgoing or any other provision of this act, no municipal authority shall acquire or take, by *condemnation,* any real property situate without the district owned or occupied by any county, municipality or other political subdivision of the State, except rights-of-way or easements for the location, construction, maintenance, renewal, relocation and removal of collecting, distribution and transmission pipes, mains, conduits, manholes, gatehouses, appurtenances and other like facilities, and for access thereto.

[emphasis added]

It is to be noted that the foregoing section allows a municipal authority to exercise the power of eminent domain, either in its own name or in the name of the municipality, and to that end the authority may invoke all of the powers of the municipality to acquire or take property for public use. However, certain restrictions are placed on the exercise by the authority of this power, one of which is relevant to the instant case. It is: "no municipal authority shall acquire or take, by condemnation, * * * real property in use as part of any system of water supply or distribution actually serving 50 or more parcels of real property."

It seems clear that, under the circumstances presented, the Gloucester Municipal Utilities Authority's attempt to exercise the power of eminent domain over Garden State's water system was in violation of Section 34 of the statute since Garden State served more than 50 parcels of real property.

Plaintiffs argue that the "50 or more" customer restriction in Section 34 is operative only where part of a water system is being condemned. They maintain that since plaintiff Authority is condemning the entire water system, the restriction does not apply. We find this position to be untenable and based on a misreading of Section 34. The obvious legislative intent is to restrict a municipal utilities authority's power to condemn to small systems of water supply or distribution, i. e., those serving less than 50 parcels of real property. We agree fully with the rulings by the trial court and the Appellate Division that the Gloucester Municipal Utilities Authority lacked the power under Section 34 to condemn Garden State's water system.

The question is whether plaintiff Township in these circumstances can condemn the Garden State's system through the exercise of its independent power of eminent domain and then turn the system over to its previously created utilities authority. The answer is in the negative. We recognize that a municipality is empowered by statute to acquire by purchase or condemnation a privately owned

water system "supplying or adapted to supply such municipality with water." *N. J. S. A.* 40:62–49(d). See *In re Complaint by Morris Twp.*, 49 *N. J.* 194, 200–202 (1967). However, where a municipality creates its own utilities authority pursuant to *N. J. S. A.* 40:14B–1 *et seq.*, it confers upon the authority the power to act in its place and stead as to matters embraced by this Act. See *Lakewood Twp. Mun. Util. v. South Lakewood Water Co.*, 129 *N. J. Super.* 462 (App. Div. 1974).

An authority so created, though, must operate within the confines of its enabling law. That law also specifically sets forth the extent to which a municipality may assist an authority in the accomplishment of its purposes. As originally enacted. *N. J. S. A.* 40:14B–24 provided:

> Any * * * [municipality] shall have power, in the discretion of its governing body, to appropriate moneys for the purposes of the municipal authority, and to loan or donate such moneys to the municipal authority in such installments and upon such terms as may be agreed upon between such local unit and the municipal authority.

A companion section of the same law, *N. J. S. A.* 40:14B–48, empowers a municipality, *inter alia,* to sell, lease, lend, grant or convey to its utilities authority any real or personal property including all or any part of any water supply or distribution facilities or sewerage facilities owned by it for use as part of a utility system.

In *Darrah v. Twp. of Evesham,* 111 *N. J. Super.* 62 (App. Div. 1970), the court was called upon to decide whether a township which had created a municipal utilities authority pursuant to *N. J. S. A.* 40:14B–1 *et seq.* to operate its sewer and water systems could finance an extension of water and sewerage facilities being made by its authority through a municipal bond issue and by assessing the cost solely against the properties benefited as a local improvement.

It was there held that a municipal authority is the alter ego of the municipality and acts in its place and stead. The Appellate Division recognized that under the law the munic-

ipality may cooperate with its authority but held that it could do so only to the extent permitted in the law. Specifically, the Appellate Division ruled that the law did not authorize a municipality to finance sewer and water extensions, being made by its utilities authority, through a municipal bond issue and local assessments.

The Legislative reaction to this decision was an amendment to Section 24 so as to specifically authorize the method of financing struck down in *Darrah*. This was accomplished by the addition of a subsection (b) to Section 24, as follows:

b. Subject to section 61 of this act (C. 40:14B-60), any local unit shall have the power to authorize as a general improvement or, in the case of a local unit which is a municipality, as a local improvement the construction and financing of any facilities for the collection, treatment and disposal of sewage or for the collection recycling or disposal of solid waste within the district arising within a district, or any facilities for the distribution of water within a district. Subject to the consent and approval of the municipal authority, such facilities may be operated by the local unit and the local unit may fix rates and charges for the use thereof, in addition to the payment of any special assessments levied by a municipality against lands and real estate specially benefited by such improvements. As provided in section 48 of this act (C. 40:14B-48), such facilities may be acquired and operated by the municipal authority as a part of the utility system, notwithstanding that special assessments may be or may have been levied for such improvements by a municipality.[2]

[*.N. J. S. A.* 40:14B-24(b)]

We do not agree with the Appellate Division comment herein that the foregoing amendment to Section 24 indicated a legislative intent that a municipal utilities authority "should be permitted to receive whatever assistance it needs and seeks from the governing body which that body is willing to give." Rather, we interpret the amendment as merely satisfying the Appellate Division holding that the

---

[2]Subsection (b) was supplemented in 1977 to include solid waste systems.

particular kind of financial assistance to a utilities authority attempted in *Darrah* would be lawful only if there were specific statutory authorization for it.

■ The municipality may cooperate with its authority in the manner authorized by *N. J. S. A.* 40:14B-24, and may sell, lease, lend, grant or convey to such authority any real or personal property including all or any part of water supply and distribution facilities owned by it for use as part of a utility system. *N. J. S. A.* 40:14B-48. But it may not circumvent the statutory restrictions imposed on such authority through the guise of the cooperation and assistance permitted under these statutory provisions.

Here the Gloucester Municipal Utilities Authority is barred by Section 34 of its enabling act from acquiring the Garden State water supply system by condemnation since the system serves 3300 customers. The Appellate Division ruling would nullify this restriction by allowing the Township to condemn the Garden State water supply system itself, and then turn it over to its utilities authority for operation.

■ We hold that it may not do so. We recognize that there is an overlapping of statutory provisions and, because of that, the potential for confusion exists. However, where a municipality has established its own municipal utilities authority pursuant to *N. J. S. A.* 40:14B-1 *et seq.*, it must act through its utilities authority and in conformity with the provisions of the enabling act. See *Lakewood Twp. Mun. Util. v. South Lakewood Water Co., supra,* 129 *N. J. Super.* at 469; *Darrah v. Twp. of Evesham, supra,* 111 *N. J. Super.* at 65.

In view of our disposition of the matter, it is unnecessary to consider Garden State's further contention that the complaint should be dismissed because plaintiffs have failed to make any showing that a valid public purpose would be served by the taking.

Reversed.

*For reversal*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and HANDLER —6.

*For remandment*—None.