202 N.J. Super. 440 (1985)
495 A.2d 434
HAMILTON TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, PLAINTIFF-RESPONDENT,
v.
APPLE TREE CORPORATION, A NEW YORK CORPORATION, T/A POWDER MILL SPRINGS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1985.
Decided June 27, 1985.
*441 Before Judges McELROY and DREIER.
Salvatore Perillo argued the cause for appellant (Salvatore Perillo, on the brief).
*442 David C. Patterson argued the cause for respondent (David C. Patterson, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant has appealed from a judgment entered in favor of plaintiff for $30,638.99 representing "sewer reservation charges" for 36 units which had been set aside for defendant. These units were originally contemplated as a portion of phase two of defendant's residential development. Phase one consisted of 104 units built at a time when plaintiff had no problem in granting permits to connect to its sewerage system. Defendant was initially granted reservations for an additional 224 units, the second phase of its development, but the New Jersey Department of Environmental Protection determined that plaintiff had over-committed for the issuance of development permits to various developers. Defendant's 224 permits were reduced to 100, but, as defendant contended, when it could not proceed as to the full second phase of its development, it lost its financing commitment and was able to build only an additional 64 units, leaving unused 36 connection permits.
The original developer apparently was never advised by plaintiff that there would be any future reservation of capacity fee nor were any bills received for such fees. In 1977 he sold his interest to defendant's principal who testified that when he purchased the project there were no liens against the property for unpaid municipal utility authority fees. It was not until 1979, when the authority rescinded its commitment for the unused 36 units, that he was advised of outstanding "reservation" fees. Parenthetically, in 1981 defendant agreed to pay $95,000 to plaintiff to purchase an additional 160 sewer units to finish phase two of the project.
The issue before us is the validity of the charges until April 11, 1979 plus interest for the stand-by reservation fees. Plaintiff's authority to collect rents, rates, fees or other *443 charges for sewerage is contained in N.J.S.A. 40:14B-22. This statute provides for the assessment of two classes of charges: "sewer service charges" and "connection fees." Specifically, the statute provides:
Every municipal authority is hereby authorized to charge and collect rents, rates, fees or other charges (in this act sometimes referred to as "sewer service charges") for direct or indirect connection with, or the use or services of, the sewerage system... in addition to any such sewer service charges, a separate charge in the nature of a connection fee or tapping fee ... may be imposed.
N.J.S.A. 40:14B-22 further provides that the amount of the connection charges "shall otherwise be entirely within the discretion of the authority in order that the combination of such connection fee or tapping fee and the aforesaid sewer service charges shall meet the requirements of section 23." Section 23 mandates that the revenues of the municipal authority at all times should be "adequate to pay the expenses of operation and maintenance of the utility system." Thus, the combination of service charges and connection fees combined must be sufficient to run the system. That being the case, a "reservation of capacity" charge which exacts an amount in excess of the authorized service or connection charges is ultra vires.
Plaintiff contends that the fees charged are authorized by N.J.S.A. 40:14B-20(10) [now 40:14B-20(12) pursuant to L. 1980 c. 77 § 4] generally giving a municipal utility authority the power:
To make and enforce bylaws or rules and regulations for the management and regulation of its business and affairs and for the use, maintenance and operation of the utility system and any other of its properties, and to amend the same;
For the disputed fees to be imposed under the authority of this general powers section, such fees would be by definition something other than a "sewer service charge" or a "connection fee or tapping fee." Since these two types of fees must, as noted above, be "adequate to pay the expenses of operation and maintenance of the utility system," the general powers section can authorize no additional charge without causing the authority to secure more revenue than is needed to pay its expenses.
*444 At oral argument plaintiff urged that additional authority for the imposition of its charges could be found in N.J.S.A. 40:14B-49 authorizing contracts for the treatment and disposal of sewage or solid waste. This section, however, deals with contracts between a municipal utility authority and a governmental unit under which the contract charges "shall be in lieu of all or any part of the service charges which would otherwise be charged and collected by the municipal authority with regard to persons or real property within the territorial area of the government unit." This statute has no application in the case before us, although such contracts are recognized in N.J.S.A. 40:14B-23, which permits the total charges to "comply with the terms of any contract of the municipal authority."
Plaintiff urges that defendant's illegality argument not be heard, since the issue was not properly presented to the trial court. Specifically, it contends that since the illegality of the charge had not been raised as an affirmative defense, it should not have been considered by the trial judge. We note, however, that at the conclusion of the testimony defendant moved for "summary judgment" (obviously intended to be a motion for judgment pursuant to R. 4:40-1). The trial judge's rejection of plaintiff's procedural argument is implicit in his statement that he was "dealing with a governmental charge against ... a property owner" and that "the legitimacy of the charge" was at issue before him. Plaintiff was free to refute this argument before the trial judge and has had ample time to brief and argue the issue before this court. We, therefore, reject any procedural impediment to our determination of the enforceability of plaintiff's "reservation of capacity fee."
In addition to its statutory infirmity, plaintiff's charge is also prohibited by Airwick Industries, Inc. v. Carlstadt Sewerage Authority, 57 N.J. 107 (1970), app. dism. and cert. den. 402 U.S. 967, 91 S.Ct. 1666, 29 L.Ed.2d 132 (1971). The Authority contends that Airwick supports its "reservation of capacity" charge, claiming that

*445 the Court clearly indicated that an M.U.A. has the right to not only assess a connection fee and a sewer service charge, but that it also can assess a capacity charge which encompasses units not yet connected into the system.
The "Schedule of Service Charges" at issue in Airwick included connection fees, capacity charges and use charges. Id. at 111-12. The Capacity Charge was as follows:
Industrial-Commercial & Residential 10.5 cents per square foot of building constructed on premises being served or available to be served; a minimum capacity charge of $150.00 per year shall be charged.
The Court's finding of validity of the charge was explained as follows:
Was the charge based on "capacity of improvement," i.e., area of building, improper due to the fact that it was not proportional?
A "capacity charge," based on the area of the building alone, when employed as the sole basis of a sewer charge is invalid, as it does not bear the proper relationship to "type, class and amount of use and service." N.J.S.A. 40:14A-8(b). To that extent the trial court was correct. However, it does bear some relationship to those subjects and when combined in a formula which includes water consumption, constitutes one valid element upon which to bottom a charge. As so employed, the capacity charge is valid. We were informed at argument that the Authority has prepared a new schedule in the light of the trial court's opinion. The validity of the new schedule is not before us and we do not pass on that subject. [Id. at 113].
What emerges from this analysis is that a capacity charge, based upon square footage of already constructed premises, may be included as an element of the annual service charge assessed against users of the system. This was not a reservation fee.
While defendant may be a user with respect to the already constructed units, it must be considered a non-user with respect to the 36 units which were never built. The Airwick court noted that
The periodic rent, rate, fee or charge provided by N.J.S.A. 40:14A-8(b)[1] deals with the charge to be made to the actual user of the system and does not contemplate a charge made against unimproved property. [Id. at 121].
*446 The Court reasoned, however, that since the unimproved property is benefited by the establishment of a sewer system it too should help defray the original construction cost of the system. Because the statute does not "authorize a special assessment or any immediate charge against a non-user," the Court suggested that the connection or tapping fee should include a charge for the cost of constructing the system. The Court stated:
Those properties actually using the system should alone absorb the cost of "operation and maintenance" since the expenditure for such purposes arise solely from that use. On the other hand, all properties, where service is available, whether actually using the system or not, should absorb the debt cost. [Id. at 120].
In the present case a connection fee was charged against and paid for the 36 units in question on April 12, 1973. The "reservation" charges, on the other hand, were annual sewerage charges on unimproved property. The Authority concedes on appeal that the basis of the judgment was the "annual sewer service charge," and further, that
There can be no doubt that the fee assessed against the Developer was the annual sewer service charge for reserving capacity for units that had not been constructed and not another connection fee.

Since the charge at issue is both beyond the power granted to the Authority pursuant to statute and in contravention of our Supreme Court's pronouncement in Airwick, the trial judge's ruling that the fee is "generally of the nature an M.U.A. can impose" must be reversed.
The judgment appealed from is reversed, and judgment is entered for defendant.
NOTES
[1] This statute references a "sewerage" authority, while the statute in the instant case is N.J.S.A. 40:14B-22, referring to a "utilities" authority. They are, however, identical.