BROWNING–FERRIS INDUSTRIES OF NORTH JERSEY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. CITY OF PASSAIC, A PUBLIC BODY POLITIC OF THE STATE OF NEW JERSEY; FRED J. KUREN, WAYNE ALSTON, PAUL DI GAETANO, LEWIS J. GILL, MARGIE SEMLER, JAMES SHOOP, HERBERT M. SORKIN, AS MEMBERS OF THE COUNCIL OF THE CITY OF PASSAIC AND INDIVIDUALLY, DEFENDANTS–APPELLANTS.

Argued January 30, 1989—Decided July 26, 1989.

*John J. McKniff,* City Attorney, argued the cause for appellants.

*Arthur R. Kobin* argued the cause for respondent (*Scerbo, Kobin, Litwin & Wolff,* attorneys; *Albert E. Cruz,* on the brief).

*Kenneth Lowell Rose* argued the cause for *amicus curiae* Municipal Utilities Authority of the City of Passaic.

*William Z. Shulman* submitted a brief on behalf of *amicus curiae* North Bergen Municipal Utilities Authority.

*Alfred A. Porro, Jr.,* submitted a brief on behalf of *amicus curiae* Authorities Association of New Jersey (*Porro and Porro,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

The dispute in this appeal arose when a municipality disapproved a contract that had been awarded by the local municipal utilities authority to a party for the collection and disposal of solid waste. The municipality acted under the authority of an ordinance that prohibits a municipal utilities authority from executing contracts unless approved by the municipal governing body. The issue posed on appeal is whether such an ordinance violates the Municipal and County Utilities Authorities Law, which governs the creation of local utility authorities and defines their powers.

On September 4, 1980, the City of Passaic (Passaic), enacted ordinance 601–80, creating the City of Passaic Municipal Utilities Authority (MUA or Authority) pursuant to the Municipal and County Utilities Authorities Law, *N.J.S.A.* 40:14B–1 to –69 (Law) for the purpose of collecting, removing, and disposing of solid waste. In July 1986, the plaintiff, Browning–Ferris Industries of North Jersey Inc., (Browning–Ferris), was one of two companies that submitted public bids to the MUA for the collection and disposal of solid waste. Plaintiff's bid proposals were for two-, three-, and five-year contracts. The only other bidder submitted proposals for two- and three-year contracts. By resolution, the MUA awarded a five-year contract to plaintiff.

In accordance with section 5 of the ordinance, the Authority submitted its resolution to the Passaic City Council for its approval. Section 5 provides that the MUA may execute contracts in its name only after the contract has been approved by the City Council. The City Council preferred plaintiff's two-year bid proposal and consequently refused to approve the MUA award of plaintiff's five-year contract.

Browning–Ferris brought suit challenging the action of the City Council. It sought a determination that section 5 of ordinance 601–80 was null and void. On cross-motions for summary judgment, the trial court ruled that section 5 of

ordinance 601–80 was contrary to and inconsistent with the Municipal and County Utilities Authority Law, and therefore null and void. In addition, the court enjoined Passaic from enforcing section 5 of the ordinance and from preventing the Authority from entering into a five-year contract with Browning–Ferris. On appeal, the Appellate Division, in a *per curiam* opinion, affirmed the judgment of the trial court.

## I.

The Municipal and County Utilities Authorities Law, *N.J.S.A.* 40:14B–1 to –69, provides that a municipality may create a Municipal Utilities Authority to furnish municipal water and sewage services, including solid waste disposal systems, in the manner provided in the Law and subject to the limitations therein. *N.J.S.A.* 40:14B–4. As noted, Passaic created the MUA pursuant to the Law. *Passaic, N.J., Ordinance* 601–80 (1980). Section 5 of the ordinance limits the ability of the MUA to enter into contracts. It states:

> The City of Passaic Municipal Utilities Authority shall have the power to authorize, issue and sell bonds and other obligations only with the approval of the City Council of said City and the City of Passaic Municipal Utilities Authority may execute contracts or agreements in its name only after any such contract or agreement shall have been approved by the City Council of said City.

Passaic contends that the ultimate purpose of this section is to assure the "financial stability and integrity of the City of Passaic." It accomplishes this purpose by allowing the municipality to exercise some degree of control over the Authority's expenditures and indebtedness, which the City alleges it would have to assume if the Authority either disbanded or dissolved. In contrast, Browning–Ferris contends that the Law clearly contemplates that an authority is empowered to enter into contracts without being subject to this kind of veto power; hence, section 5 is invalid. It also argues that section 5 "was not so intimately related to the entire ordinance as to render the ordinance totally invalid," and therefore can be properly severed from the entire ordinance.

The policy of the Law is to "foster and promote by all reasonable means the provision and distribution of an adequate supply of water ..., the relief of lands and waters ... from pollution, ... and the generation of hydroelectric power." *N.J. S.A.* 40:14B–2. Municipal authorities created under the Law can be authorized to furnish a wide range of services and achieve a variety of purposes. These include the distribution of an adequate water supply, elimination and prevention of water pollution, furnishing sewage collection and disposal services, providing solid waste services in a manner consistent with the Solid Waste Management Act, *N.J.S.A.* 13:1E–1 to –48, generating hydroelectric power, and operating and maintaining utility systems owned by other governments through contracts. *N.J. S.A.* 40:14B–19(a).

The Law provides authorities expansive powers commensurate with their broad and important responsibilities. *See, e.g., N.J.S.A.* 40:14B–20. An authority is thus empowered to engage in a variety of functions to assure the effective execution of its statutory powers and accomplishment of its purposes. It may acquire, construct, and operate treatment, purification, and filtration plants and other types of works, *N.J.S.A.* 40:14B–19(b), and exercise "full responsibility and powers" with respect to any works created under the Law. *N.J.S.A.* 40:14B–2(3). A municipal authority may also "legally supply the treatment and disposal aspect of the sewerage service through its own facility or through outside contract." *Reahl v. Randolph Township Mun. Utils. Auth.,* 163 *N.J.Super.* 501, 514 (App.Div.1978), certif. den., 81 *N.J.* 45 (1979).

Further, authorities have a general power to enter into and award contracts to achieve their goals. The relevant statute provides:

> Every municipal authority shall be a public body politic and corporate, constituting a political subdivision of the State established as an instrumentality exercising public and essential governmental functions to provide for the public

health and welfare and shall have perpetual succession and have the following powers:

\*  \*  \*  \*  \*  \*  \*  \*

(13) To do and perform any acts and things authorized by this act under, through or by means of its own officers, agents and employees, or by contract with any person;

(14) To enter into any and all contracts, execute any and all instruments, and do and perform any and all things necessary, convenient or desirable for the purposes of the municipal authority or to carry out any power expressly given in this act, subject to "Local Public Contracts Law," P.L.1971, c. 198 (C. 40A:11–1 et seq.). [*N.J.S.A.* 40:14B–20(13), (14).]

The expansive grant of powers to such local authorities has been recognized in a variety of contexts. Authorities thus have the specific power to enter into contracts concerning the disposal of solid waste with governmental units, including municipalities, where the contract charges are in lieu of all or any part of the service charges otherwise charged and collected by the municipal authority. *N.J.S.A.* 40:14B–49; *Hamilton Township Mun. Utils. Auth. v. Apple Tree Corp.*, 202 *N.J.Super.* 440, 444 (App.Div.), certif. den., 102 *N.J.* 327, 328 (1985); *see In re Pemberton Township Mun. Utils. Auth.*, 205 *N.J.Super.* 31, 41 (App.Div.1985); *Canterbury Properties, Inc. v. Mun. Utils. Auth. of Mount Laurel Township*, 124 *N.J.Super.* 448, 458 (App.Div.), cert. den., 64 *N.J.* 157 (1973).

Were we otherwise undirected by these statutory provisions in determining the scope of the Authority's contracting powers, the Law itself gives guidance. The Law prescribes a generous framework for interpretation:

This act shall be construed liberally to effectuate the legislative intent and as complete and independent authority for the performance of each and every act and thing herein authorized, and a municipal authority shall not ... constitute a municipality or agency or component of a municipality subject to any provisions of Title 40 of the Revised Statutes, and of Title 40A of the New Jersey Statutes, except P.L.1971, c. 198 "Local Public Contracts Law" (C. 40A:11–1 et seq.) [*N.J.S.A.* 40:14B–68.]

We are surely admonished to give this great weight in our understanding of the Law. *See, e.g., McMenamin v. Evesham Mun. Utils. Auth.*, 104 *N.J.Super.* 161, 167 (Ch.Div.) ("a reasonable construction of the ... Act requires that all provisions

of the statute be construed together, and each must be considered in light of and in harmony with all the other provisions), aff'd, 107 *N.J.Super.* 42 (App.Div.1969). This counsels us to ascribe breadth, independence, and discretion to the specific powers expressly delegated by the Legislature to local authorities.

We thus conclude from the statute's stated purposes, its delegation of specific enumerated powers, including the power to contract, and its expressed policy to guarantee the governmental independence of local authorities, that municipal utilities authorities have and were intended by the Legislature to have independent, broad, and flexible powers to enable them to execute their purposes completely and comprehensively.

The further question is whether this understanding of authority statutory power would preclude the kind of municipal action that occurred in this case, namely, one that purported to override or limit the power to contract for services. The Law rather clearly indicates that an authority shall not be deemed an agency or arm of the municipality with respect to its authorized duties. Once an authority is created, it becomes the "alter ego" of the municipality; the authority has the power to act in the municipality's place concerning matters encompassed by the Law. *Gloucester Township Mun. Auth. v. Garden State Water Co.,* 79 *N.J.* 87, 94 (1979). Once the authority is established, therefore, the municipality must act through it and in conformity with the provisions of the enabling act. *Id.* at 96.

Although an authority acts in the place of a municipality, the Law sets forth specific instances in which a municipality and municipal authority may act in concert. A municipality may cooperate with an authority by lending or donating funds, *N.J.S.A.* 40:14B-24(a); by authorizing the construction and financing of facilities for the collection, treatment, and disposal of sewage or solid waste within the district, *N.J.S.A.* 40:14B-24(b); by granting or conveying real or personal property to them, *N.J.S.A.* 40:14B-48; and by entering into a contract for

the treatment and disposal of sewage or solid waste through use of the existing facilities of a municipality, *N.J.S.A.* 40:14B–49. It is to be noted that the authority to contract for the furnishing of services, such as the collection and disposition of solid waste, is not included in the enumeration of shared powers.

The specific enumeration of powers that may be exercised by. an authority in concert with the municipality underscores the independence and exclusivity of the powers otherwise specifically conferred on authorities. *Jordan v. Zidel,* 40 *N.J.* 244, 248–49 (1963). It may thus be reasonably inferred that an authority enjoys exclusive powers in all areas except those that are expressly required to be shared. *See Darrah v. Township of Evesham,* 111 *N.J.Super.* 62, 65 (App.Div.1970) (because the Law specifically sets forth the methods in which an authority may accomplish its purposes, "the act must be interpreted as reserving all other powers exclusively in the authority."). We concur in the observation of the Appellate Division in a somewhat variant setting that such an understanding of the law is "more consistent with *N.J.S.A.* 40:14B–68 ... which indicates that the act [should] be liberally construed to be the *complete* and independent authority for the performance of each and every task therein authorized." *Ibid.* The *Darrah* court thus found that a municipal utilities authority's power to finance water and sewerage facilities is exclusive because it was not specifically enumerated as a shared power in the Law.[1]

---

[1]In *Darrah,* the court found that the authority's powers over financing were exclusive and rejected a cooperative financing effort between the authority and municipality. The Legislature responded to this decision by amending *N.J.S.A.* 40:14B–24 specifically to authorize the method of financing that the court struck down. *L.* 1970, *c.* 209, § 3; *N.J.S.A.* 40:14B–24(b). In *Gloucester Township Mun. Auth. v. Garden State Water Co., supra,* 79 *N.J.* 87, we interpreted the 1970 amendment "as merely satisfying the Appellate Division holding that the particular kind of financial assistance to a utilities authority attempted in *Darrah* would be lawful only if there were specific statutory authorization for it." *Id.* at 95–96. We rejected the interpretation that the Legislature intended that a municipal utilities authority "should be permitted to receive

██ This understanding of the Law as granting authorities exclusive power to act except where concurrent powers have been specifically enumerated is exemplified with respect to the powers of an authority over financing and is instructive in terms of a proper understanding of the Authority's power to contract for services involved in this case. In 1970, the Law was amended to authorize increased cooperation between a municipality and its authority with respect to financing. *L.*1970, *c.* 209, § 3; *N.J.S.A.* 40:14B–24(b). This amendment, however, did not empower a municipality to countermand an authority's exercise of statutory power where such power was not enumerated as one to be shared. Although acknowledging that a municipality may cooperate with its authority in the manner authorized by *N.J.S.A.* 40:14B–24 and 40:14B–48, the Court in *Gloucester Township Mun. Auth. v. Garden State Water Co., supra,* 79 *N.J.* 87, declared that a municipality could not "circumvent the statutory restrictions imposed on such authority through the guise of the cooperation and assistance permitted under these statutory provisions." *Id.* at 96. We there determined that where an authority is barred by its enabling act from acquiring real property used to supply water by condemnation, the municipality may not nullify the restriction by condemning the property itself and turning it over to the authority. *Ibid.*

As noted above, the statutory power to contract for the collection and disposal of solid waste that is reposed in municipal authorities is not a shared power. The power to contract for the handling of solid waste may be contrasted with an authority's power to construct facilities as delineated in *N.J. S.A.* 40:14B–61. This provides that "[n]o sewage disposal plant or other facilities for the collection, treatment or disposal of sewage arising within a district shall be constructed unless the municipal authority shall give its consent thereto and approve

---

whatever assistance it needs and seeks from the governing body which that body is willing to give." *Id.* at 95.

the plans and specifications therefor." The authority must approve a completed application to them concerning such facilities within ninety days of the date of its submission. The committee statement to this section declares that the purpose of the amendment to this section "is to grant a municipal utilities authority *exclusive jurisdiction* within its district with respect to the construction, operation and financing of sewage, solid waste and water distribution facilities, except as it may consent otherwise." *Senate County and Municipal Government Committee Statement, Assembly,* No. 1680, *L.*1979, *c.* 418 (quoted in *N.J.S.A.* 40:14B–61) (emphasis added). This indicates that if the Legislature intended that an authority power be shared with its municipal parent, it will do so expressly. *See In re Petition of South Lakewood Water Co.,* 61 *N.J.* 230, 249–50 (1972) (Board of Public Commissioners has no power under the Municipal Utilities Authorities Law to force authority to consent to extension of water services into its territory by private utility because the Law "confers a legislative franchise upon a municipal authority to furnish water and sewer service, exclusive except with its consent, to the municipal area specified in the creating ordinance.").

In interpreting the meaning of a statute we are most influenced by its purposes, its specific provisions and language, and its internal consistency. Moreover, if the subject of an enactment is also addressed directly or indirectly by other statutes, a court is enjoined to consider such statutes in *pari materia* in determining the meaning and intent of the Legislature. *Mimkon v. Ford,* 66 *N.J.* 426 (1975); *State v. Green,* 62 *N.J.* 547 (1973). Passaic thus presents the additional argument that certain provisions of the Local Authorities Fiscal Control Law, *N.J.S.A.* 40A:5A–1 to −27, demonstrate that the Legislature clearly intended to give some degree of control to a municipality over a local authority and to hold a municipality accountable should a local authority experience financial difficulties.

The Local Authorities Fiscal Control Law vests in the Local Finance Board, a state agency, the power to oversee the cre-

ation, financing, and dissolution of local authorities. The Division of Local Government Services in the Department of Community Affairs reviews and approves the annual budgets of authorities. *N.J.S.A.* 40A:5A–2. The intent of the law was "to strengthen the credit standing of municipalities, counties, and independent financial authorities." Senate County and Municipal Government Committee Statement to Assembly Bill No. 144 (1983).

Passaic relies on the provisions of *N.J.S.A.* 40A:5A–18 and –19 concerning remedial action that the Local Finance Board may take to address financial difficulties of authorities. The references to obligations in these subsections allude to obligations accepted and assumed by the local unit, the municipality. The City also points to the repeated references in these provisions to the "local unit" as evidencing the legislative intent to hold the local unit accountable should the authority experience financial difficulties. In this situation, however, the Local Finance Board is authorized to determine whether an authority is having financial difficulties and to summon the officials of the authority and local unit to a hearing. The mere fact that the local unit or municipality is requested to participate in such a hearing does not indicate a legislative intent that the local unit have the power to participate in the authority's operations or to control an authority's ability to enter into contracts.

The City also stresses the obligation that it would have to undertake if the MUA were dissolved. Such dissolution, however, can occur "only under carefully circumscribed instances." *Howell Township v. Manasquan River Regional Sewerage Auth.*, 215 *N.J.Super.* 173, 180 (App.Div.1987). The Local Authorities Fiscal Control Law establishes two procedures for dissolving an existing local authority. In the first, as noted, if the Director of the Division of Local Government Services has reason to believe that an authority is faced with financial difficulty, he or she may convene a hearing before the Board. *N.J.S.A.* 40A:5A–18. The Board may dissolve the local authority if it determines that "due to financial difficulties or misman-

agement, the dissolution of an authority will be in the public interest ... and will achieve a more efficient means for providing and financing local public facilities." *N.J.S.A.* 40A:5A–21. These schemes negate the implication that a municipality can share the authority's regular operating responsibilities.

Further, the Law itself establishes a procedure for dissolving an authority. *N.J.S.A.* 40:14B–13. This procedure is rigorous and carefully structured; it prevents the dissolution of an authority if it has any outstanding debts or obligations. Furthermore, dissolutions accomplished through this procedure must secure the Local Finance Board's approval to be effective. *Stone v. Old Bridge Township*, 111 *N.J.* 110, 120 (1988); *N.J.S. A.* 40A:5A–20.

We are thus satisfied that the concerns of the municipality over contingent liabilities arising from an authority's operations were not intended by the Legislature to be met by the antecedent ability of a municipality to share in the statutory power of an authority to enter into contracts for services. Rather, the Local Authority Fiscal Control Law provides a range of other mechanisms that address the concerns of a municipality relating to secondary or contingent obligations attributable to a local authority.

In addition, the general concern that a municipality, and indeed the public, may have with respect to the financial irresponsibility on the part of an authority is dealt with by other means. While the power to contract in an authority is exclusive and independent, it is not unlimited or unbridled. The power of an authority to enter into contracts is governed by the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to –49. The purpose of the law is to guard against "favoritism, improvidence, extravagance and corruption" in the awarding of contracts, and to protect the taxpayer's interest by promoting a maximum amount of competition for the public contract, so that the lowest competitive price is secured. *Capasso v. L. Pucillo & Sons, Inc.*, 132 *N.J.Super.* 542, 549 (Ch. & Law Div.), aff'd, 132

*N.J.Super.* 473 (App.Div.1974). This law requires contracts for the performance of work to be paid with public funds be subject to public-bidding requirements. *N.J.S.A.* 40A:11–3 and 4. The law also limits the length of various contracts.[2] *N.J.S.A.* 40A:11–14. Further, all municipal contracts—including those of an authority—concerning the collection and disposal of solid waste are subject to the jurisdiction of the Board of Public Utilities. The contracts are filed with the Board, which may modify its provisions if it finds the rates are not reasonable. *N.J.S.A.* 48:13A–7; *In re Application of Saddle River,* 71 *N.J.* 14, 23–24 (1976).

In sum, the concerns on the part of a municipality and its taxpayers with respect to the soundness and integrity of the operations of a local utilities authority are entirely legitimate. However, the Legislature has in several related enactments provided standards to protect against irresponsibility and improvidence of an authority. Concurrently it has also recognized the need to enable local authorities to act with sufficient independence to effectuate their statutory purposes. It has thus carefully and deliberatively determined those powers that appropriately entail the cooperation of the municipality and are to be shared and those that are to be reserved exclusively in the authority. The contracting power with respect to solid waste, at issue in this case, is such an exclusive power.

## II.

It was observed by Judge Mandak in the trial of this case that the veto power given the City under its ordinance "would for all practical purposes emasculate the powers as statutorily

---

[2]The Law generally limits the duration of contracts to a period of twelve consecutive months, consistent with the provisions of the Local Budget Law, *N.J.S.A.* 40A:4–1 to –87, with certain exceptions. The exceptions include contracts for the collection and disposal of garbage and refuse, which may not exceed five years, and contracts for the recycling of solid waste, which may not exceed twenty-five years. *N.J.S.A.* 40A:11–14.

conferred upon the municipal authorities." Such a veto power, it was noted in another case, "presents the potential for dismantling the autonomy and independence" of local authorities, "which are necessary to discharge their statutorily enumerated powers." *Local 534 v. Board of Chosen Freeholders*, 220 *N.J.Super.* 67, 73 (Law Div.1987).

We concur in these observations. For the reasons expressed, the judgment is affirmed.

O'HERN, J., dissenting.

To read the learned opinion of the majority, one gathers that we deal here with a majestic imperative of governmental structure: "to guarantee the governmental independence of local authorities, that municipal utilities authorities have and were intended by the Legislature to have independent, broad, and flexible powers to enable them to execute their purposes completely and comprehensively." *Ante* at 89. We sense one like Robert Moses being tied down by the New York City Council in his attempts to administer the Triborough Bridge and Tunnel Authority.

Nothing could be further from reality. We have here an authority in word only: a paper creation designed to avoid the municipal spending cap. It has no employees, it has no revenues, it has no offices outside of City Hall. It exists only for its lawyer, a financial officer, and one staff person. The municipality does all of its work (regular street department employees maintain the sewer system) and pays all of its bills. The costs incurred by the authority are paid out of the City's regular budget from its real property tax receipts.

Yet the majority says that this shadow authority must have the "exclusive power" to exercise contracting with respect to solid waste, else the "soundness and integrity" of its operations will be threatened by lack of "sufficient independence to effectuate [its] statutory purposes." *Ante* at 95. How incongruous this seems when the mightiest of authorities, the Port

Authority of New York and New Jersey, the New Jersey Turnpike Authority, the New Jersey Highway Authority which operates the Garden State Parkway, each has its minutes subject to approval by the executive authority that created them. *N.J.S.A.* 32:1–35.92 (Port Authority of New York and and New Jersey); *N.J.S.A.* 27:23–3(F) (New Jersey Turnpike Authority); *N.J.S.A.* 27:12B–4 (New Jersey Highway Authority). For other statutes declaring actions taken by an authority to become effective on approval by the Governor within a specified period of time, see New Jersey Building Authority Act, *N.J.S.A.* 52:18A–78.4(i); New Jersey Sports and Exposition Authority Law, *N.J.S.A.* 5:10–4(i); New Jersey Health Care Facilities Financing Authority Law, *N.J.S.A.* 26:2I–4(i); New Jersey Educational Facilities Authority Law, *N.J.S.A.* 18A–72A–4(i); New Jersey Economic Development Authority Act, *N.J.S.A.* 34:1B–4(i).

The general rationale behind such requirements is that

[s]uch scrutiny would in no way impede the activities of the authority nor would it in any way affect the interests of the investors in the authority. It would however result in a greater degree of coordination between the development of authority projects and the needs of the people of this State.

[Sponsor's Statement No. A. 525, *L.*1973, *c.* 370, *reprinted in Fidelity Union Trust Co. v. New Jersey Highway Auth.*, 164 *N.J.Super.* 246, 259 n. 2 (Ch.Div.1978), *rev'd*, 85 *N.J.* 277, *appeal dismissed*, 454 *U.S.* 804, 102 *S.Ct.* 76, 70 *L.Ed.*2d 73 (1981).]

There is nothing in the Municipal and County Utilities Authorities Law, *N.J.S.A.* 40:14B–1 to –69, that prohibits a municipality from enacting a similar assurance that the authority will act in the public interest. Of course, the Act is to be construed liberally, but I would have thought that a liberal construction would have connoted a flexible construction.

I rather suspect that this matter will be readily resolved at the municipal level dehors the law of municipal authorities. In the meantime, Browning–Ferris, not the taxpayers of the City of Passaic, will be the beneficiary of the Court's unflinching concern for the "governmental independence of local authorities."

Accordingly, I would reverse the judgments of the courts below and enter judgment in favor of the defendants.

*For affirmance*—Justices CLIFFORD, POLLACK, HANDLER, GARIBALDI and STEIN—5.

*For reversal*—Justice O'HERN—1.