215 N.J. Super. 173 (1987)
521 A.2d 858
HOWELL TOWNSHIP AND HOWELL TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, PLAINTIFFS-APPELLANTS,
v.
MANASQUAN RIVER REGIONAL SEWERAGE AUTHORITY, OCEAN COUNTY UTILITIES AUTHORITY, BOROUGH OF FARMINGDALE AND TOWNSHIP OF WALL, DEFENDANTS-RESPONDENTS.
BOROUGH OF FREEHOLD, ERIC H. FOSTER, JR., AND EDWARD S. MACK, PLAINTIFFS-APPELLANTS,
v.
MANASQUAN RIVER REGIONAL SEWERAGE AUTHORITY, OCEAN COUNTY UTILITIES AUTHORITY, BOROUGH OF FARMINGDALE AND TOWNSHIP OF WALL, DEFENDANTS-RESPONDENTS.
TOWNSHIP OF FREEHOLD, DAVID P. SEGAL, ROBERTA FRIEDMAN AND EVELYN CROSS, PLAINTIFFS-APPELLANTS,
v.
MANASQUAN RIVER REGIONAL SEWERAGE AUTHORITY, OCEAN COUNTY UTILITIES AUTHORITY, BOROUGH OF FARMINGDALE AND TOWNSHIP OF WALL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1986.
Decided February 9, 1987.
*175 Before Judges KING, DEIGHAN and HAVEY.
William J. O'Hagan, Jr., argued the cause for appellants Howell Township and Howell Township Municipal Utilities Authority (Stout, O'Hagan & O'Hagan, attorneys, William O'Hagan of counsel and on the joint brief with Matthew R. Kiffin).
Joseph D. Youssouf, argued the cause for appellant Borough of Freehold (Joseph Youssouf of counsel and on the joint brief).
Duane O. Davison argued the cause for appellant Township of Freehold (Bennett, Davison & Monoz, attorneys; Duane Davison of counsel and on the joint brief).
Charles E. Starkey argued the cause for respondent Manasquan River Regional Sewerage Authority (Starkey, Kelly, Blaney & White, attorneys; Charles Starkey on the brief).
Respondent Ocean County Utilities Authority has filed a letter communication of non-participation.
Respondent Borough of Farmingdale and Township of Wall have not filed briefs.
The opinion of the court was delivered by HAVEY, J.A.D.
The principal issue raised by these consolidated appeals is whether the Chancery Division has the inherent power to dissolve a local sewerage authority created under N.J.S.A. 40:14A-1, et seq. We conclude that the Chancery Division has no such power. We hold that a local sewerage authority may be dissolved only under the statutory framework provided by N.J.S.A. 40:14A-1, et seq., and the Local Authorities Fiscal Control Law, N.J.S.A. 40A:5A-1, et seq.
The issue comes to us by way of appeals from a summary judgment of the Chancery Division dismissing plaintiffs' complaints in which they sought an order: (1) dissolving defendant Manasquan River Regional Sewerage Authority (MRRSA) of which plaintiffs were constituent members; (2) invalidating a *176 service agreement between MRRSA and defendant Ocean County Utilities Authority (OCUA); (3) invalidating plaintiffs' service agreements with MRRSA; (4) compelling OCUA to assume MRRSA's existing indebtedness and to establish a uniform rate for all of its customers, and (5) compelling defendants Township of Wall and the Borough of Farmingdale, members of MRRSA, to join in a plan to dissolve MRRSA. Plaintiffs also sought damages against OCUA based on theories of negligence and intentional misrepresentation. We affirm the summary judgment dismissing plaintiffs' complaints to the extent that they sought an order dissolving MRRSA, compelling OCUA to assume MRRSA's debt and compelling Wall and Farmingdale to participate in the dissolution. However, we reverse the dismissal of plaintiffs' remaining claims. The Chancery Division judge failed to address whether there were genuine issues of material facts as to the remaining relief sought. We therefore remand for further proceedings.
MRRSA was created in 1972 pursuant to N.J.S.A. 40:14A-1 by parallel ordinances adopted by the five participating municipalities: plaintiffs Borough of Freehold, Howell Township, Township of Freehold, and defendants Borough of Farmingdale and Township of Wall. MRRSA originally planned to construct both a waste-water treatment facility and regional collection system to collect and treat the waste-water flow generated in its service area. It contemplated installation of regional interceptor sewer lines paralleling major streams in the region which would convey the waste water to a treatment plant to be constructed by MRRSA in Wall Township.
However, in 1980 federal and state environmental agencies directed MRRSA to explore the possibility of using existing treatment facilities then in place in Ocean County and operated by OCUA. Plaintiffs claim that during negotiations between MRRSA and OCUA in 1980 and 1981, OCUA estimated that its "user" charge of $850 per 1,000,000 gallons would not increase significantly over the next four years. According to plaintiffs, federal and state officials, relying upon OCUA's projection, *177 determined that no grants would be given to MRRSA to assist in the construction of its own regional waste-water treatment facility. As a result, MRRSA abandoned its plan to construct the plant. Instead, it decided to construct interceptor sewer lines to collect untreated sewage from its member municipalities and convey it to OCUA's plant for treatment and disposal.
On September 16, 1981, MRRSA and OCUA entered into a service contract under which OCUA agreed to collect and treat MRRSA's waste water. Following the execution of the service agreement, MRRSA entered into agreements with its member municipalities obligating MRRSA to construct force mains and an interceptor system to transport the waste water to OCUA's facility in Ocean County. The system is presently in place and operating. MRRSA issued temporary bonds to finance the construction of these improvements, and on July 12, 1984, approved a bond resolution authorizing issuance of $21,000,000 in permanent bonds. We are advised that sale of the permanent bonds has been withheld pending disposition of this action and that temporary financing is continuing.
According to plaintiffs, OCUA increased its rate from $850, charged in April 1981, to $1,800 per 1,000,000 gallons, charged in January 1984. MRRSA collects OCUA's fee from its members and adds an additional fee to cover its own capital reserves, insurance costs and the payment of principal and interest on the interim financing. As of the date of plaintiffs' complaints, February 8, 1985, MRRSA had proposed a bulk rate to be charged its member municipalities of $3,022 per 1,000,000 gallons.
Plaintiffs instituted these consolidated actions, claiming that MRRSA has become a "... superfluous administrative agency [which] should be dissolved." They sought dissolution of MRRSA and an order compelling OCUA to assume MRRSA's indebtedness. Plaintiffs alleged that the service agreement between MRRSA and OCUA resulted in disparate treatment between MRRSA and OCUA members in that plaintiffs were *178 being charged substantially higher fees than OCUA members for essentially the same service. Plaintiffs demanded implementation of "... uniform, nondiscriminatory and equitable sewer service rate for all classes of uses connected to ... OCUA['s sewerage] system." Finally, plaintiffs demanded damages against OCUA for OCUA's negligent or intentional misstatements to MRRSA and federal and state officials which resulted in MRRSA's decision to abandon its own plans to construct its own waste-water treatment facility.
MRRSA moved for partial summary judgment, seeking dismissal of the complaints to the extent that they sought dissolution of the authority. The Chancery Division judge granted the motion, concluding that it had no power to dissolve the authority, reasoning that the method of dissolving a local authority was a legislative, rather than a judicial concern. The judge then noted that an action had been instituted by MRRSA against OCUA challenging the rate OCUA charged MRRSA for waste-water treatment. In that action, MRRSA sought damages and a rate alteration, contending that OCUA had misrepresented that the $850 rate would remain in effect through 1984 and that a substantial part of rate presently charged by OCUA reflected unnecessary expenses incurred by OCUA prior to its service contract with MRRSA. The judge was of the view that the remaining relief sought by plaintiffs in the present actions would be mooted if MRRSA succeeded in its action against OCUA. He therefore dismissed "without prejudice" plaintiffs' remaining claims.
Plaintiffs first contend that the Chancery Division erred in concluding that it was not empowered to dissolve MRRSA. They argue that under the Superior Court's original general jurisdiction, it has inherent equitable power to dissolve the authority. We disagree.
MRRSA is a regional authority created under N.J.S.A. 40:14A-1, et seq. It is empowered to construct, maintain and operate works for the collection, treatment or disposal of sewage *179 or other waste, charge fees to the recipient of the services provided, and to issue bonds for the financing of such works. N.J.S.A. 40:14A-2. The governing bodies of any two or more municipalities, by the adoption of parallel ordinances, may create an authority to serve the municipalities as an autonomous body. N.J.S.A. 40:14A-4(c).
N.J.S.A. 40:14A-4(h) permits member municipalities to dissolve the authority by parallel resolutions on condition that: (1) either the members of such authority have not been appointed or the authority has consented to such dissolution, and (2) the authority has no debts or obligations outstanding.
There is no provision in N.J.S.A. 40:14A-1, et seq. permitting dissolution of the local authority once it has incurred indebtedness by temporary or permanent financing, as is the case here. Such a procedure was provided by the passage of the Local Authority's Fiscal Control Law, L. 1983, c. 313, codified as N.J.S.A. 40A:5A-1, et seq. This legislation vested in the Local Finance Board (Board), a state agency, the power to oversee the creation, financing and dissolution of local authorities. N.J.S.A. 40A:5A-4 to:5A-21. Its legislative purpose was to "... promote the financial integrity and stability of local authorities ... by providing for State review of project financing of local authorities and for State ... supervision over [their] financial operations." N.J.S.A. 40A:5A-2. It was intended that the act
... would strengthen the existing system of State oversight of local financial operations and debt by providing for State supervision of independent local authority and special tax district financial operations and debt. Implementation of these reforms will strengthen the credit standing of municipalities, counties, and independent financing authorities, by extending a proven system of financial regulation to a now largely unregulated area of local debt financing. [Senate County and Municipal Government Statement, L. 1983, c. 313].
The act establishes two procedures for dissolving an existing local authority. N.J.S.A. 40A:5A-20 permits dissolution upon passage of parallel ordinances by all of the member municipalities. The Board shall approve the dissolution if it finds that the ordinances make

*180 ... adequate provision in accordance with a security agreement or otherwise for the payment of all creditors or obligees of the authority and that adequate provision is made for the assumption of those services provided by the authority which are necessary for the health, safety and welfare of the recipients of those services.
A second procedure is found under N.J.S.A. 40A:5A-18 and 40A:5A-21. N.J.S.A. 40A:5A-18 provides if at any time, as a result of exercising his responsibilities under the act, the Director of the Division of Local Government Services has reason to believe that an authority is faced with financial difficulty, he may convene a hearing before the Board. N.J.S.A. 40A:5A-21 vests in the Board the power to dissolve the local authority if, after a hearing, it determines that:
[D]ue to financial difficulties or mismanagement, the dissolution of an authority will be in the public interest and will serve the health, welfare, or convenience of the inhabitants of the local unit or units, and the dissolution will achieve a more efficient means for providing and financing local public facilities, except that an order dissolving an authority shall assure adequate provision in accordance with a security agreement or otherwise for all creditors or obligees of the authority.
Any order so adopted by the Board must be approved by the Commissioner of the Department of Community Affairs, the State Treasurer and the Attorney General. N.J.S.A. 40A:5A-21.
It is clear from this statutory framework that the Legislature intended that local authorities, indebted by interim financing or permanent bonding, may be dissolved only under carefully circumscribed instances. By expressly limiting the bases for dissolution, the Legislature protected the financial integrity of the authority, thus allaying the fears of bondholders that their investments may be endangered because of uncontrolled dissolution by dissatisfied members. See Ringwood Solid Waste Manage. Auth. v. Ringwood, 131 N.J. Super. 61, 68 (Law Div. 1974). In doing so it engendered confidence in authority financing, thereby generating much needed funds to construct waste-water treatment systems. Of equal importance, Board jurisdiction over the dissolution process assured the general public that *181 services would not be disturbed and that comparable service would remain available after dissolution.
The Superior Court has no inherent power to intrude upon this legislative scheme. To hold that it does would implicate significant separation of power principles. Firstly, a sewerage authority is "... a public body politic and corporate constituting a political subdivision of the State...." N.J.S.A. 40:14A-7. As such, it shares many of the characteristics of a municipality. "The dissolution of municipal corporations is a legislative function and may be exercised only by the legislative department of the government, and may not be conferred upon the courts by the Legislature." 56 Am.Jur.2d, Municipal Corporations, § 90 at 144 (1971); see also 2 McQuillin, Municipal Corporations, (3 ed. 1979), § 8.04 at 574; 62 C.J.S., Municipal Corporations, § 104 at 233 (1983). We have been provided with no authority for the proposition that a court has the power to dissolve a public body, such as a local authority, created by the Legislature.
Secondly, courts must refrain from usurping the function of the Legislature when its intent is clearly expressed. Tewksbury Tp. v. Jersey Cent. Power & Light, 159 N.J. Super. 44, 51 (App.Div. 1978), aff'd o.b. 79 N.J. 398 (1979); Property Owners Assn. of N. Bergen v. Tp. of N. Bergen, 74 N.J. 327, 338 (1977). A legislative mandate should not be thwarted by us to achieve a result not contemplated by the Legislature. Magro v. City of Vineland, 148 N.J. Super. 34, 39 (App.Div. 1977). Our function is to enforce the legislative will as expressed by the clear language of the statute. See In re Jamesburg High School Closing, 83 N.J. 540, 548 (1980).
The obvious legislative intent expressed by N.J.S.A. 40A:5A-1 et seq. is that unless one of the statutory bases for dissolution of an indebted authority is satisfied, the authority cannot be dissolved. Creating new grounds for dissolution by judicial fiat would usurp the legislative will and foster uncertainty as to the financial integrity of every authority having *182 dissatisfied members. Moreover, the Superior Court is simply not equipped to fashion plans of dissolution and methods of protecting the financial interests of bondholders and authority customers. The strain on judicial resources in attempting such a task is self-evident. Creditors and customers of the authority must be assured that the dissolution process has been reposed exclusively in the Board which has the expertise to protect their respective interests. We therefore conclude that plaintiffs' remedy in seeking dissolution of MRRSA is limited exclusively to the statutory scheme under which MRRSA was created and its financial structure is controlled.
As we understand the procedural history, plaintiffs are not necessarily without a remedy. We were advised at oral argument that defendants Farmingdale and Wall are now willing to participate in a plan for dissolution of MRRSA, providing OCUA agrees to assume MRRSA's indebtedness. We do not know whether OCUA has been approached with such a proposal. It may be that such a dissolution plan is feasible. If so, the plan could be submitted to the Board for approval under N.J.S.A. 40A:5A-20.
Moreover, plaintiffs may have a remedy under N.J.S.A. 40A:5A-21 which permits the Board to dissolve a local authority after a hearing if it determines "... due to financial difficulties or mismanagement ...", dissolution is in the public interest and would achieve a more efficient means for "... providing and financing local public facilities...." We acknowledge that the dissolution process under N.J.S.A. 40A:5A-21 may not be triggered simply by request of a dissatisfied member. The director has exclusive power to convene a hearing after a preliminary review and evaluation of an authority's financial condition. N.J.S.A. 40A:5A-18. Nothing in the statute suggests that such a hearing may be initiated by application of a dissatisfied member. The attorney general has, by letter dated October 28, 1985, so advised the Board.
*183 However, as the attorney general properly noted, dissatisfied authority members are perfectly free to bring circumstances regarding the financial condition of an authority to the attention of the director who, based on the information presented, may convene a hearing pursuant to the act. As we understand it, no such showing of mismanagement or financial difficulty has been made to the director by plaintiffs, or any one else, as of this date. The director therefore has not been called upon to decide whether, "as a result of exercising his responsibilities", a hearing should be convened. N.J.S.A. 40A:5A-18. In the circumstances, the question of what remedy is available, if any, in the event he refuses to act if such a showing is made, need not be addressed.
We affirm the dismissal of those counts of the complaints seeking an order: (1) dissolving MRRSA; (2) compelling OCUA to assume MRRSA's debt, and (3) compelling Wall's and Farmingdale's participation in a dissolution plan. However, we reverse the order to the extent it dismissed the remaining counts. MRRSA's motion for partial summary judgment demanded dismissal of plaintiffs' complaints only to the extent that plaintiffs demanded dissolution of MRRSA. It did not address the remaining relief sought by plaintiffs. The Chancery Division judge dismissed the remaining counts on his own, on the ground that the related litigation between MRRSA and OCUA may render moot the remainder of plaintiffs' claims. While this may have been a sensible conservation of judicial time, we know of no authority which would permit a dismissal of claims in a pending action because those claims might be addressed and resolved in companion litigation. As we understand it, plaintiffs were not prepared to address the question of whether there were fact issues as to their remaining claims at the motion hearing. We therefore reinstate the remaining counts and remand for further proceedings.
Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.