260 N.J. Super. 346 (1992)
616 A.2d 945
IN RE WILLIAM LIMONGELLI, D.D.S., PETITIONER-APPELLANT,
v.
NEW JERSEY STATE BOARD OF DENTISTRY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1992.
Decided December 1, 1992.
*348 Before Judges PETRELLA, LONG and D'ANNUNZIO.
Patrice M. Renner argued the cause for appellant (Franzblau, Dratch & Friedman, attorneys; Stephen N. Dratch, of counsel; Patrice M. Renner, on the brief).
Anne Marie Kelly argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Anne Marie Kelly, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Dr. William Limongelli appeals from a decision of the New Jersey State Board of Dentistry denying his petition for relicensure and extending his suspension for an additional ten year period. His license had been revoked by consent order dated January 9, 1986, with the stipulation that he could apply for reinstatement after five years. The revocation was based on Limongelli's plea of guilty to seven counts of a twelve-count criminal indictment for theft by deception through the submission of multiple fraudulent insurance claims. As a result of the revocation or suspension[1] Limongelli was required to divest *349 himself of any interest in the various dental practices with which he was associated.
For an understanding of what transpired, a recitation of the facts is necessary.
Prior to a January 22, 1991 reinstatement petition by Limongelli, the Board had conducted a transcribed investigative inquiry based upon information it received that he was continuing to practice during his suspension. Testimony of Dr. Anthony Vitale, D.M.D., was taken on February 15, 1989, without Limongelli being present or notified. Limongelli's testimony was taken on March 29, 1989, and he was advised by the Board that it would inform him of its findings. No action was taken of any sort before Limongelli applied for reinstatement.
In 1984, Limongelli was the sole shareholder in two professional corporations which operated Dental Parkway Clinic, Inc., in Newark and Orange Dental Center, P.C., in Orange. He owned the buildings where these practices were located, and rented space to the two professional corporations.
According to the 1989 testimony of Vitale,[2] taken out of the presence of Limongelli, which the Board considered in its 1991 decision, Vitale began to work for Limongelli several days per week and also worked part-time for another dentist beginning in 1984, two years after graduating from dental school. Late in 1984, Vitale purchased the other dentist's practice. In late 1985 due to financial difficulties, Vitale approached Dr. Limongelli and asked him if he was interested in purchasing 50% of the stock in his practice. Thereafter, the two formed a professional corporation known as Personal Choice Dental Associates, P.A. (Personal Choice).
*350 For his interest in Personal Choice, Limongelli paid $7,500, obtained a second mortgage on one of his properties to finance a letter of credit which had been required by the prior owner and made installment payments. According to Limongelli, he made the final installment in January 1986. Vitale had testified in 1989 that the final installment was not paid until June 1986.
According to Vitale, he learned of Limongelli's license revocation sometime in August 1986, and negotiations then began regarding a buy-out of Limongelli's shares in Personal Choice. Vitale explained before the Board that it was not until November or December 1986 that the partnership was dissolved. However, according to a letter written by Vitale's attorney, transfer of the stock in Personal Choice had not been effectuated as of December 17, 1987.
With respect to Limongelli's efforts to divest his interests in the two dental clinics of which he was the sole shareholder, Limongelli's accountant approached Vitale in the beginning of 1986 to determine if he was willing to purchase the two dental clinics. As noted, Vitale was supposedly not aware until August 1986 that Limongelli's license had been revoked, and the parties began to seriously negotiate a buy-out of both clinics at that time.
According to Limongelli, the parties began to plan for Vitale to take over the clinics in October 1985. On October 7, 1985, certificates of change of registered agent were filed for the two clinics, naming Vitale as the new agent. Limongelli testified that his attorney told him that that was all that was required to transfer ownership of the clinics. Limongelli said that he thought that as of January 1986 he no longer owned the practice after Vitale became the registered agent and filed the annual report, even though Vitale never paid anything for the patient records, equipment or instruments.
On August 25, 1986, Vitale executed a document which provided that he was the "Director with Intent to Purchase" of *351 the two individually named clinics.[3] According to Vitale's 1989 testimony, he was not represented by counsel during the negotiations, and the document was prepared by Limongelli's attorney. Limongelli's attorney was supposed to follow up with the actual paperwork to effectuate the sale of the two clinics. No money had exchanged hands and no purchase price had even been discussed, no contract was signed, and according to Vitale, when he shook hands with Limongelli he did not consider that he had purchased the clinics. Rather he had agreed that he would be the owner in the future and would take over directorship of the two clinics.
Limongelli acknowledged that no money exchanged hands. His position was that Vitale agreed to run the clinics "for awhile" and then they would execute a buy-out agreement. Limongelli concedes that the "actual paperwork" regarding the buy-out did not get started until 1987. Limongelli fixed a price of $350,000 and $250,000, respectively, for the two clinics.
The actual buy-out was never consummated. Although some papers were drawn-up, they were never signed. At no time did Limongelli try to sell either of the individually owned clinics to anyone else and never advertised their sale nor sought assistance from a broker.
In July 1988, almost a year after "formal" negotiations began, Vitale wrote Limongelli's attorney that he was no longer interested in purchasing the dental clinics and asking that his name be removed from all accounts, corporate registrations, insurance forms, payroll accounts and telephone directories. Vitale said in 1989 that he felt he was being "strung along" for two years. He stated:
I am out here, I feel like I was put out in left field stretched out for two years. I am spending my money, going to the lawyers; I am calling, checking *352 with the banks to make sure everything is all right and then it all comes to a puff, nothing.
During his tenure as Director of the two dental clinics, Vitale did not draw a salary or receive any compensation. His intention had been to take his compensation after he purchased the two dental centers. Vitale testified that he never believed that he had any proprietary interest in the two dental clinics. He said that between January and August 1986, he had nothing to do with administration of the clinics. It was not until late August or early September that he began signing checks for the clinics.
Limongelli admitted that he continued to play a role in the management and administration of the two clinics after January 9, 1986, the date on which his license was revoked. In April 1986, he hired a dentist for one of the centers. In a July 14, 1987 deposition taken in connection with a separate lawsuit, Limongelli stated that as of that date he was involved in the administration of payroll services for the two clinics. As recently as September 1987, Limongelli was signing "all" of the checks for the clinics. He further testified in a subsequent deposition (September 2, 1987) that he was doing "all" of the administrative work for the Orange Dental Center. He claims to have acted as a liaison between Vitale and the clinics' business manager until early 1987.
On January 1, 1989, after Vitale was no longer acting as director of the clinics, Limongelli leased the two clinics to Dr. Joseph Prasad, D.D.S. According to Limongelli, it was Vitale who turned over the clinics to Prasad, despite the fact that Limongelli signed the various leases for the building and equipment. He claimed that Prasad owned the equipment under the lease. In the 1989 lease for the Orange Dental Center, Limongelli, who prepared the leases himself, wrote in the following language:
The tenant shall be responsible for all damage to the premises and equipment shall be surrendered at the termination of this lease in as good condition as *353 received at the beginning of this lease. A detailed list of all equipment and furnishing is attached.
This lease further provided:
The equipment, instruments and supplies as well as any patient records present in the leased premises at time of commencement of this lease, shall be the ownership of the tenant for the term of this lease.[[4]]
The leases also provided an option to Dr. Prasad to purchase a one-half interest in the dental clinics. When confronted with the question as to how he could sell what he did not own, Limongelli responded, "He would turn it back to me" and acknowledged that if the lease terminated, then the practice would revert back to his ownership.
In February 1989, Limongelli considered the assets of the two dental practices as still his property and listed them in a Bankruptcy petition under Chapter 13 in proceedings captioned "In re William Alfonso Limongelli d/b/a Orange Dental Center." Under "Personal Property" in the petition is listed the following:

 All shares of
 Orange Dental Center, P.C./Equipment
 Dental Parkway Clinic, Inc./Equipment $10,000
 Lease of 325 Central Ave., Orange $42,000
 Lease of 679 So. Orange, Newark $42,000

When asked by the Board to explain language in the petition which said "these assets are to be given up to induce lease," Limongelli in effect conceded ownership.[5]
Several months after his appearance at the 1989 investigative inquiry, Limongelli filed another voluntary petition in personal Bankruptcy which again included the two dental centers as personal property, but now listed their value as zero.
On his appeal from the Board's 1991 action extending the period of "suspension," Limongelli argues: (1) that he was *354 denied due process; (2) that the Board's findings and conclusions are not supported by the evidence or the law; and (3) that the penalty imposed is so excessive as to be arbitrary, capricious and unreasonable.
We address initially Limongelli's contention that the procedure followed by the Board in failing to notify him of contemplated charges, taking testimony in his absence, and with respect to the penalty proposed to be imposed upon him denied him due process.
We start with the proposition that an occupational license is considered in the nature of a property right. In re Polk License Revocation, 90 N.J. 550, 562-563, 449 A.2d 7 (1982). Thus, deprivation of that right is subject to due process procedures. Mathews v. Eldridge, 424 U.S. 319, 332-333, 96 S.Ct. 893, 901-902, 47 L.Ed.2d 18, 31-32 (1976); Graham v. New Jersey Real Estate Comm'n, 217 N.J. Super. 130, 135, 524 A.2d 1321 (App.Div. 1987). We have held that "a protected right in a professional license comes into existence only after a license has been obtained." Id. at 136, 524 A.2d 1321. Thus, the Board contends that since Limongelli's license was revoked, no property interest existed with respect to a re-licensure application. We determined that the appellant in Graham did not have a vested property right in a real estate license which had been permitted to lapse for failure to remit the necessary renewal fees. See ibid. As a result, an amendment to the statute regulating real estate licenses, which required persons whose license had lapsed for two or more years to attend classes and pass the state examination prior to any renewal, applied to appellant.
However, cases involving retroactive application of statutes in similar situations are not persuasive on the issue of due process in an application for re-licensure. See Pittenger v. Department of State, 142 Pa.Cmwlth. 57, 61-63, 596 A.2d 1227, 1230 (1991) (held not unconstitutional in case of revoked license to retroactively apply ten year re-licensure delay penalty *355 for drug act violations under a subsequently passed statute); Keeley v. Real Estate Comm'n, 93 Pa.Cmwlth. 291, 296-98, 501 A.2d 1155, 1158 (1985) (under then-existing statutory framework, "former licensees do not possess any property right in their revoked licenses" such that would trigger due process).
Brown v. State Bd. of Pharmacy, 129 Pa.Cmwlth. 642, 566 A.2d 913 (1989), discussed the distinction between a "suspended" and a "revoked" license. The court concluded that the appellant's license to practice pharmacy had been suspended rather than revoked because it was "susceptible to revival." Thus, the appellant still possessed a property right entitled to due process, and retroactive application of the statutory ten-year re-licensure delay penalty was held unconstitutional as applied to him.
Black's Law Dictionary, 1447 (6th ed. 1990) defines suspension as:
The act by which a party is deprived of the exercise of his right for a time. A temporary stop of a right, a partial extinguishment for a time, as contrasted with a complete extinguishment, where the right is absolutely dead.... It differs from extinguishment, because a suspended right is susceptible of being revived, which is not the case where the right was extinguished.
Here, Limongelli's license was capable of being revived or reinstated not only after a period of five years under the consent order, but also under N.J.S.A. 45:6-7 which provides:
Any person whose license is so suspended or revoked shall be deemed an unlicensed person during the period of such suspension or revocation, and as such shall be subject to the penalties prescribed for unlicensed persons who practice dentistry, and such person may, in the discretion of the board, be relicensed at any time to practice without an examination upon application to the board. [Emphasis added.]
The proceedings here are essentially suspension hearings since Limongelli's license was capable of reinstatement and revival. Thus, due process principles apply. We find persuasive the reasoning of Brown v. State Board of Pharmacy, supra (566 A.2d 913), particularly in light of the language of N.J.S.A. 45:6-7 allowing an application for re-licensure at any time in the discretion of the Board.
*356 The Administrative Procedure Act (APA) provides in N.J.S.A. 52:14B-11 that a hearing must be held in cases of revocation or refusal to renew any license.[6] Although this provision does not directly address an application for restoration of licensing privileges, N.J.S.A. 52:14B-2 defines a contested case as:
a proceeding, including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing....
See also In re Polk License Revocation, supra (90 N.J. at 567, 449 A.2d 7). N.J.S.A. 52:14B-9 sets forth basic procedural rights, including the opportunity for a hearing after reasonable notice, as well as the opportunity to respond, appear and present evidence and argument on all issues involved. See subsections (a) and (c).
We are satisfied here that whether or not the Board had grounds to impose a further penalty, under the circumstances of the instant case there have been violations of principles of basic fairness and of due process by the according of inadequate procedural protections and lack of notice. In re Kallen, 92 N.J. 14, 25, 455 A.2d 460 (1983). The Board has not followed the requirements of the APA which we hold applies to these contested proceedings.
The notice given to Limongelli in 1989 of the Board's then-investigation of his involvement in the two dental clinics was inadequate. The fact is that Limongelli was not given an opportunity to appear at that time, nor to confront and respond to the testimony of Dr. Vitale. See Paco v. American Leather Mfg. Co., 213 N.J. Super. 90, 93, 516 A.2d 623 (App.Div. 1986). This is so despite the contention of the Board that Limongelli's own testimony established a factual foundation for the Board's *357 conclusion. Nor did the Board initiate any proceedings at that time or give Limongelli notice of any violation or further complaint or even issue a warning or citation for noncompliance. The Board did nothing as far as we can tell.
Although not required by the express terms of the January 9, 1986 license revocation order, the Board takes the position that Limongelli was to divest his interest in Personal Choice and two other clinics by April 9, 1986, ninety days following the revocation of his license pursuant to N.J.S.A. 14A:17-13(c).
However, nowhere in its August 15, 1991 findings of fact or conclusions of law did the Board rely on Limongelli's connection to Personal Choice in extending the suspension.
In addition, while it is true that N.J.S.A. 14A:17-13(c) indicates that only a professional licensee may own shares of stock in a professional corporation, that subsection would only apply in the case of the one professional corporation (i.e., Personal Choice) in which more than one professional licensee is involved. Thus, subsection (c) of that statute provides:
(c) Within 375 days following the date of death of a shareholder, or within 90 days following his disqualification to own shares in the corporation, all of the shares of such shareholder shall be transferred to, and acquired by, the corporation or persons qualified to own such shares.... Nothing contained in this section shall prevent the parties involved from making any other arrangement or provision in the certificate of incorporation or by-laws, or by agreement, to transfer the shares of a deceased or disqualified shareholder to the corporation or to persons qualified to own the same, whether made before or after the death or disqualification of the shareholder, provided that within the period herein specified, all the stock involved shall have been so transferred.
The Board's August 15, 1991 denial of Limongelli's petition for reinstatement of license did rely in part on his failure to transfer stock ownership of the two wholly owned clinics, Orange Dental Center, P.C., and Dental Parkway Clinic, Inc., pursuant to N.J.S.A. 14A:17-13(c).
However, subsection 13(c) of the statute is inapplicable to the two professional corporations (the Newark and Orange clinics) owned solely by Limongelli because it contemplates a situation where only one of several shareholders of a professional corporation *358 dies or is disqualified. In a situation involving sole ownership of a professional corporation, N.J.S.A. 14A:17-13(b) applies. That subsection provides:
(b) Whenever all shareholders of a professional corporation shall cease at any one time and for any reason to be duly licensed or otherwise legally authorized to render the same professional service for which such corporation was organized, or if such corporation shall for any reason fail to comply or require compliance with the provisions of this section or of section 11 of this act, said corporation shall thereupon be treated as converted into and shall operate thereafter solely as a business corporation under applicable provisions of the Business Corporation Act of New Jersey, exclusive of this act.
Section 11, which is referred to in the above quoted subsection 13(b), provides:
If any officer, shareholder, agent or employee of a professional corporation becomes legally disqualified to render the same professional service as that for which the corporation was organized, he shall forthwith sever all employment with such corporation and shall not, directly or indirectly, participate or share, as a shareholder, in any earnings or profits realized by such corporation on account of professional services rendered on or after the effective date of such disqualification. N.J.S.A. 14A:17-11. (Emphasis supplied.)
Hence, Limongelli did not have to divest himself of any individually owned corporation. He merely had to cease practicing dentistry and having financial interest in the practice "as a shareholder."[7]
The procedural deficiencies with respect to the inadequacy of the notice, lack of confrontation opportunity as to witnesses, and procedural defects by failure to comply with the APA require a reversal and remand for a new hearing.
We reverse the determination of the Board and remand for a plenary hearing in accordance with the Administrative Procedure Act and this opinion.
NOTES
[1] The Board takes the position that it had imposed a revocation of license rather than a five year suspension. We need not dwell on the distinction in this opinion because it does not affect our consideration of the appeal. See infra at 354-355, 616 A.2d at 949-950.
[2] All references to testimony of Vitale refer to that given on February 15, 1989.
[3] This document was introduced into evidence during Vitale's testimony in February 1989. However, it was not contained in the Board's file, nor has it been provided in Limongelli's appendix.
[4] Similar language is contained in the 1989 lease for the Dental Parkway Clinic, as well as the 1991 renewal of these two leases.
[5] Moreover, Dr. Limongelli admitted that the equipment was worth a lot more than $10,000.
[6] This provision is part of the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq.
[7] We need not decide here the applicability of N.J.S.A. 45:6-19, second subsection (3), which deals with persons who retain "ownership or control of dental material, equipment or office and makes the same available in any manner for the use by operators, assistants or their agents; ..." Whether any exception for "bona fide sales" or chattel mortgages exists can be addressed at the hearing. Mere ownership or retention of dental records and equipment as referred to in N.J.S.A. 45:6-19 second subsection (3), would not seem enough to constitute the practice of dentistry.