750 A.2d 157 (2000)
330 N.J. Super. 510
NESTLÉ USABEVERAGE DIVISION, INC., a Delaware Corporation, Plaintiff-Respondent,
v.
MANASQUAN RIVER REGIONAL SEWERAGE AUTHORITY, A Public Body Corporate and Politic of the State of New Jersey, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 2000.
Decided May 5, 2000.
Linda Hayes Grasso, for defendant-appellant (Cleary Alfieri & Grasso, attorneys; Ms. Grasso and Stephen C. Vanna III, on the brief).
Mark L. Mucci, Newark, for plaintiff-respondent (LeBoeuf, Lamb, Greene & MacRae, attorneys; Mr. Mucci, on the brief).
Before Judges PRESSLER, KIMMELMAN and CIANCIA.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This declaratory judgment action arises under the Sewerage Authorities Law, N.J.S.A. 40:14A-1 to -37. The sole issue before us is whether a regional sewerage authority is authorized by N.J.S.A. 40:14A-8 to charge a user who is already in the system an additional connection fee when its wastewater flow increases even though it will pay an increased service charge based on the additional daily gallonage. The trial judge granted summary judgment to plaintiff Nestlé, USABeverage Division, Inc., and denied the cross-motion of defendant Manasquan River Regional Sewerage Authority (MRRSA). Judge McGann held that an additional connection fee may not be charged based only on increased water usage where there is in fact no actual additional physical connection. MRRSA appeals. We agree with Judge McGann's conclusion and consequently affirm.
The essential facts are not in dispute. MRRSA is a regional sewerage authority established in 1979 pursuant to the Sewerage Authorities Law by the Boroughs of Freehold and Farmingdale and the Townships of Wall, Freehold and Howell, all of whom entered into a Service Agreement with it. At that time Nestlé was a user of the Freehold system and consequently became an indirect user of MRRSA.[1] *158 MRRSA collects the waste water from the systems of its member municipalities and transmits it through its pipelines for final treatment to the Ocean County Utilities Authority (OCUA), whose customer MRRSA is. Nestlé, moreover, pre-treats its waste water on site.
In 1996 Nestlé's Freehold plant, which had theretofore produced primarily coffee products, planned to add instant tea production, resulting in a projected increase in its daily flow from 500,000 gallons to 720,000. It is undisputed that OCUA had no objection to Nestlé's application for the increased flow, requiring only that it be approved by MRRSA. It is further undisputed that this increased flow entailed no new or additional physical connection by Nestlé to any sewer system and that the transmission lines of MRRSA were fully adequate to handle this flow and thus that no new lines were required to be installed, enlarged or modified in any way. Despite the foregoing, MRRSA took the position that it was entitled to charge Nestlé a connection fee on the sole basis of the increased flow. Using the measure of an equivalent dwelling unit (EDU) as equal to a daily flow of 300 gallons, the MRRSA calculated that the increased flow of 220,000 gallons constituted 733.33 EDUs. Since the scheduled connection fee per EDU was $740, MRRSA demanded a connection fee of $542,664.20 as a condition of its approval of Nestlé's increased flow application. In order to avoid production delays, Nestlé paid this sum under protest pursuant to an escrow agreement with MRRSA and commenced this declaratory judgment action seeking a determination that the connection fee was improperly charged.
A sewerage authority's authority to assess fees against its direct and indirect users is circumscribed by N.J.S.A. 40:14A-8. Paragraph (b) permits two types of fees, a connection fee and a service charge. It spells out in detail the various bases upon which the annual service fee may be calculated including, of course, the amount of flow. It also permits in "addition to any such periodic service charges, a separate charge in the nature of a connection fee or tapping fee, in respect of each connection of any property with the sewerage system." The connection fee has two components: the cost of physical connection if made by the authority and an amount representing "a fair payment" by the connector "toward the cost of the system." In three numbered subparagraphs, the manner of calculating a fair payment is prescribed in order to assure that new users contribute fairly to the capital costs incurred by the authority in having developed the system as it exists at the time the new user joins it. The fundamental scheme is for the new user, who is benefitting from those capital costs, to contribute to the authority's already incurred debt service and thereby to relieve prior users of a portion of that burden in order that all users share the debt service equally. Paragraph (b) further requires the authority to recompute the connection fee annually after a public hearing and then to impose that revised connection fee "upon those who subsequently connect ... to the system."
The concept of escalating connection fees in order to accomplish parity, although not mathematically certain parity, was approved by the Supreme Court in Airwick Industries, Inc. v. Carlstadt Sewerage Authority, 57 N.J. 107, 270 A.2d 18 (1970), cert. denied, 402 U.S. 967, 91 S.Ct. 1666, 29 L.Ed.2d 132 (1971), pursuant to which N.J.S.A. 40:14A-8 was amended by L. 1975, c. 320, § 1, to expressly so provide. Clearly, however, not all of the debt service is reasonably recoupable by way of connection fees. Thus paragraph (c) of *159 N.J.S.A. 40:14A-8, which governs the fixing of the service charge and requires that the service charge be adequate to pay "all expenses of operation and maintenance of the sewerage system" specifically contemplates inclusion in the service charge calculation of "principal of and interest on any bonds and ... such reserves or sinking funds therefor as may be required ... or... deemed necessary or desirable by the sewerage authority."
In view of this statutory framework in the context of the Airwick rationale, we think it plain that a new connection fee may not be charged unless a new actual physical connection or an enlargement or other such modification of an existing connection is made. As the Court made clear in Airwick:
The Authority may, therefore, include as part of the connection fee a sum of money which will represent a fair contribution by the connecting party toward the debt service charges theretofore met by others. The statute need not be read to require precise mathematical equality, but rather to contemplate rough equality, keeping in mind that we are now in an area in which, as with respect to other tax impositions, absolute equality is neither feasible nor constitutionally vital. The Authority may, therefore, in its discretion, prescribe a schedule of connection fees escalating with the passage of time, requiring a potential user to absorb a fair proportion of the sum theretofore paid by the actual users for principal and interest on the bonds. [57 N.J. at 122, 270 A.2d 18 (Emphasis added.)]
In our view the Court thus plainly limited the charging of a connection fee to those not already in the system, and we are persuaded that, at best, what MRRSA was attempting to do by charging Nestlé a connection fee based on increased flow is to achieve just that absolute mathematical precision which the Court determined was not feasible and for which the Legislature has given no warrant.
We have heretofore construed N.J.S.A. 40:14A-8 to prohibit the imposition of a new connection fee on a user already in the system. Thus in Animated Family Restaurants of East Brunswick v. East Brunswick Sewerage, 209 N.J.Super. 532, 508 A.2d 259 (App.Div.), certif. denied, 104 N.J. 441, 517 A.2d 432 (1986), the local authority attempted to impose a connection fee on premises whose use had change from commercial retail offices and warehousing to a dinner theater for pre-teens although no new sewerage connection was required or made. We held that it could not do so since the "clear import of this language [N.J.S.A. 40:14A-8(b) ] is that an actual connection to the sewerage system is a prerequisite to the imposition of a connection fee." 209 N.J.Super. at 537, 508 A.2d 259. We are satisfied that our reasoning in Animated Family Rest., by which we concluded that a change of use alone could not justify an additional connection fee, applies as well to increased flow alone. As we there observed, "[t]he imposition of a new connection fee upon a change in use would raise a number of technical problems which the Legislature could have been expected to address if it had intended to authorize such a fee." Id. at 538, 508 A.2d 259. The same is true here. Nestlé will obviously be paying an increased service charge to account for its increased flow. But in these circumstances, an additional connection fee may not be exacted.
Finally, we note that MRRSA points to the definition of "connection" contained in N.J.A.C. 7:14A-1.2. "Connection" is therein defined as
any physical or operational change, associated with an increase in projected flow, to a collection system of any building, facility, or other structure, either proposed or existing for which a building permit or other municipal approval including site plan or subdivision approval is required, and which connects directly or indirectly with any portion of a treatment works.
*160 The simple answer to MRRSA's reliance on this definition is that the regulation is inapplicable to a regional or local sewerage authority established pursuant to N.J.S.A. 40:14A-1, et seq., and certainly has nothing to do with connection fees as therein prescribed. The subject of the regulation, N.J.S.A. 7:14A, is the creation of the State's Pollutant Discharge Elimination System (NJPDES) and its purpose, as set forth in N.J.A.C. 7:14A-2.1(a) is to establish
the regulatory framework under the authority of N.J.S.A. 58:10A-1 et seq., 58:11A-1 et seq., 58:11-49 et seq., 58:10-23.11 et seq., 58:11-18.10 et seq., 13D-1 et seq.,13:1E-1 et seq., 58:4A-5, 58:4A-4.1, 58:12A-1 et seq., 42 U.S.C. §§ 300F et seq. and 33 U.S.C. §§ 1251 et seq., within which the Department [Department of Environmental Protection] regulates the discharge of pollutants to the surface and ground waters of the State.
It prescribes a system for issuance of NJPDES permits by the Department of Environmental Protection. While the NJPDES system may be complementary to activities of a sewerage authority, it is entirely separate and apart in implementation, applicability, and definition.
The summary judgment appealed from is affirmed.
NOTES
[1] It is stipulated that Nestlé never paid a connection fee to MRRSA since it was grandfathered in at the time the MRRSA was established. It presumably paid for its connection to the Freehold system. MRRSA takes the position on this appeal that the issue is unaffected by whether Nestlé paid its connection fee to Freehold or to it, asserting its right to charge a new connection fee for Nestlé's increased flow even if it had been the recipient of the original connection fee.