**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5459-18T4

1500 HARBOR BOULEVARD
URBAN RENEWAL, LLC,

      Plaintiff-Appellant,

v.

NORTH HUDSON SEWERAGE
AUTHORITY,

      Defendant-Respondent.

_____

Argued telephonically July 15, 2020 –
Decided July 31, 2020

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1863-18.

Dennis M. Toft argued the cause for appellant (Chiesa Shahinian & Giantomasi, PC, attorneys; Dennis M. Toft and Michael K. Plumb, on the briefs).

R.N. Tendai Richards argued the cause for respondent (Winne, Banta, Basralian & Kahn, PC, attorneys; R.N. Tendai Richards and Jason P. Capizzi, of counsel; Michael J. Cohen, on the brief).

PER CURIAM

Plaintiff 1500 Harbor Boulevard Urban Renewal, LLC (1500 Harbor), the owner and developer of a new 236-unit residential building, appeals from the August 6, 2019 order for final judgment dismissing its complaint in lieu of prerogative writs that challenged a $1,153,456.25 sewer connection fee assessed by defendant North Hudson Sewerage Authority (the Authority). We affirm.

I

The essential facts are not in dispute. The Authority is a public sewerage authority created in 1988 as a result of an Environmental Protection Agency consent order compelling local communities to relinquish control over their treatment facilities. The Authority provides wastewater collection and treatment services for Hoboken, Union City, Weehawken, and West New York. To ensure that its system can handle the capacities of waste flow generated by these communities, the Authority has made substantial expenditures to update its treatment facilities, included constructing a $120 million secondary treatment plant and an $18 million pump station. In order to pay its debt service,[1] the

_____

[1] According to the Authority, as of January 31, 2017, its "existing debt service and capital expenditures" totaled $417,054,854.

Authority charges ongoing usage fees based upon the average gallons per day (GDP) per unit, and sewer connection fees.[2]

Plaintiff owns the property located at 1500 Harbor Boulevard in Weehawken (the Property). A warehouse was constructed on the Property in approximately 1930. In the 1980s, the warehouse was converted to an office building. Since the 1980s, the Property was connected to a local privately-owned sewerage system that conveyed sewage to the sewerage system operated by the Authority.

After plaintiff acquired the Property, it obtained a demolition permit in 2015 and demolished the existing office building down to the pre-existing pier.[3] Plaintiff does not dispute that its demolition permit required the disconnection of all utilities, including its sewer connection. Nor does it dispute that the Property was not connected to the Authority's sewer system for several years.

On December 1, 2017, plaintiff filed its sewer connection application with the Authority, seeking to construct "a lateral connection between the proposed

----

[2] To calculate the applicable connection fee each year, the Authority follows the calculation method set forth in N.J.S.A. 40:14A-8. Plaintiff does not challenge the Authority's calculation of its connection fee, only its imposition.

[3] As part of the construction project, plaintiff replaced the existing eight-inch sewer line, which connects the Property to the private sewerage system, with a ten-inch sewer line.

building on [the Property] and the existing sanitary sewer manhole in front of the building." With its application, plaintiff also submitted an engineer's report which calculated an anticipated flow for the proposed 236-unit residential structure as 38,625 gallons per day (GPD). The Authority adopted the GPD number contained in plaintiff's application in calculating the applicable sewerage connection fee. On December 12, 2017, the Authority issued plaintiff an invoice in the amount of $1,149,543.25, representing the total sewer connection fee owed by the applicant, less $3,913 it previously paid. On April 16, 2018, counsel for plaintiff delivered two checks representing the total amount the Authority determined to be due and owing; however, the checks were submitted under protest and reserved all rights and remedies with respect to demanding repayment of the amount paid.

On May 10, 2018, plaintiff filed the underlying complaint in lieu of prerogative writs challenging the Authority's connection fee on three grounds, contending: 1) the fee violated the Sewerage Authorities Law[4]; 2) the Authority adopted an invalid resolution; and 3) the fee constituted an "illegal exaction" in violation of state and federal constitutions. Thereafter, plaintiff moved affirmatively for summary judgment on each of the claims set forth in its

---

[4] N.J.S.A. 40:14A-1 to -37.

complaint. After hearing oral argument, the trial court issued a decision denying the motion.

The court found that because plaintiff demolished the existing structure down to the pier and disconnected all utilities (including the sewer connection) for an extensive period, a new sewer connection application was required. The trial court also agreed with the Authority that plaintiff "is not merely changing the use of an existing structure – instead, [plaintiff] is adding new service [–] 236 units [–] none of which had previously paid a connection fee."

The trial court also found the Authority's resolution, which assessed the challenged connection fee, constituted a valid exercise of its statutory authority under N.J.S.A. 40:14A-8. On that basis, the trial court concluded the Authority did not act arbitrarily, capriciously, or unreasonably in adopting its resolution that assessed the challenged connection fee.

On August 6, 2019, the trial court entered an order for final judgment restating its conclusion on summary judgment that the Authority "did not act in any arbitrary, capricious or unreasonable manner in charging the plaintiff a sewer connection fee," and dismissed plaintiff's complaint in lieu of prerogative writs "with prejudice as to all counts." This appeal followed.

A-5459-18T4

In <u>Airwick Indust., Inc. v. Carlstadt Sewerage Auth.</u>, 57 N.J. 107, 122, (1970), our Supreme Court, emphasizing the need for equality in setting connection fees, held that an authority may "include as part of the connection fee a sum of money which will represent a fair contribution by the connecting party towards the debt service charges theretofore made by others." In <u>White Birch Realty Corp. v. Gloucester Twp. Mun. Util. Auth.</u>, 80 N.J. 165, 171 (1979), the Court, again stressing the need for equality between new customers and prior connectors, reaffirmed its prior holding that a connector is "obligated to pay its proportionate share of the cost of the system so that a new customer [will] stand on a footing comparable to existing customers."

The connection fee "has two components: the cost of physical connection if made by the authority and an amount representing 'a fair payment' by the connector 'toward the cost of the system.'" <u>Nestle USA v. Manasquan River Reg'l Sewerage Auth.</u>, 330 N.J. Super. 510, 513 (App. Div. 2000) (quoting N.J.S.A. 40:15A-8). As Judge Pressler noted in <u>Nestle</u>, "The fundamental scheme is for the new user, who is benefiting from those capital costs, to contribute to the authority's already incurred debt service and thereby to relieve

prior users of a portion of that burden in order that all users share the debt service equally." Ibid.

III

The parties do not dispute the facts, but instead dispute whether the judge misapplied the law. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

On appeal, plaintiff argues that numerous decisions of this court have established that "once a property is connected to a sewer system, a change in use or increase of sewage flows does not provide a valid basis for a sewerage authority to impose a new connection fee." In the trial court and before us, plaintiff's argument that it should not be required to pay connection fees for its 236 new residential units relies primarily on Nestle, and an earlier case, Animated Family Restaurants of East Brunswick, Inc. v. East Brunswick Sewerage Authority, 209 N.J. Super. 532 (App. Div. 1986).

The trial court distinguished Nestle and Animated because they dealt with a mere change in use of an existing building, with a resulting increase of flow into an existing connection. Neither case involved the complete demolition of

A-5459-18T4

an existing building, including the complete disconnection of all utility connections; in addition, neither case involved the construction of a new building nor the addition of any new billable units connecting to the system.

Plaintiff continues to maintain that the Authority was not authorized to assess a connection fee, contending that demolition of the existing building and construction of a new building on the Property constituted only a change in use or an increase in flows, neither of which warrant such a charge. Plaintiff's argument misinterprets the applicable statute and case law, and does not fairly or accurately describe what occurred. In addition, plaintiff's argument ignores the fact that it completely disconnected from the sewer system and then reconnected to the system, with 236 new residential-unit users, representing 236 new customers requiring sewer service.

We conclude that plaintiff's rationale would lead to results that are not only anomalous but absurd. We agree with the Authority that

> [plaintiff's] argument would allow developers to "game the system" while simultaneously depriving sewer authorities of the capital necessary to operate their systems. This is because, under [plaintiff's] logic, once a property is connected to a sewerage system, the sewerage authority can never again assess a connection fee, regardless of further development on the site. Thus, a developer that acquires an old shanty located on valuable waterfront property, so long as the shanty was once connected to the sewer system, could never

be charged a connection fee by the sewerage authority[,] regardless of what the developer ultimately builds in its place. This would place other users of the authority's system in the position of subsidizing the developer, rather than the developer paying its proportionate share of the system's cost.

Charging a new sewer connection fee for each of plaintiff's 236 new units is rational and consistent with the public policy underlying N.J.S.A. 40:14A-8(b), which authorizes new sewer connection fees based on a "fair payment toward the cost of the system." In contrast, plaintiff's interpretation of the applicable statute and case law would result in all other users of the Authority's sewer system subsidizing plaintiff. Such a result would violate the "principle requiring fairness and equality among users in contributing to the costs of the system." 612 Assocs., L.L.C. v. N. Bergen Mun. Utils. Auth., 215 N.J. 3, 20 (2013).

Plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5459-18T4